FILED
SUPERIOR COURT
OF GUAM

2019 AUG -5 PM 3: 47

CLERK OF COURT

By:_____

## IN THE SUPERIOR COURT OF GUAM

PEOPLE OF GUAM,

vs.

SALVADOR BUDDY SANTOS,

Defendant.

Criminal Case: CF0202-17

DECISION AND ORDER
(*Re:* Motion to Suppress)

### INTRODUCTION

This matter came before the Honorable Anita A. Sukola on May 7, 2019, on Salvador Buddy Santos's ("Defendant") Motion to Suppress. Public Defender Stephen Hattori appeared on behalf of Defendant. Assistant Attorney General Rolland Wimberley appeared on behalf of the People of Guam ("People"). Upon review of the oral and written arguments and legal authorities presented by the Parties, the Court hereby **DENIES** Defendant's Motion to Suppress.

### BACKGROUND

On April 8, 2017, around midday, Guam Police Department ("GPD") Officer J. Quitugua responded to a dispatch report concerning a person driving while possibly under the influence. The information derived from a tip called into GPD.[1] The call described a yellow Dodge Dakota (Guam License Plate Number 6241TFL) swerving along Route 4, which then entered Gogue Drive, Ordot and parked in front of a residence. Upon arrival at the reported location, Officer Quitugua identified a vehicle matching the call's description and verified the license plate. Officer Quitugua approached the parked vehicle and observed Defendant sitting in the driver's seat with the engine running. He

---

[1] The tip was called in by informants Seth Horton and Felicia Eaton, two individuals who personally observed Defendant driving.


ORIGINAL



knocked on Defendant's window and asked him to shut off the vehicle; Defendant complied. When Defendant exited his vehicle, Officer Quitugua observed Defendant's lack of balance, slurred speech, and watery, bloodshot eyes. With the vehicle's cab opened, Officer Quitugua detected a strong, alcohol-like odor emanating from inside, and a glass bottle placed in the center console. Officer Quitugua requested Defendant to perform Standard Field Sobriety Tests ("SFST"). Defendant refused, citing his inability to walk and balance properly due to his preexisting back and knee injuries. Defendant stated he uses a cane to facilitate walking and standing, which he did not have at the time. At a later time, Defendant also refused a blood, urine, and breath test.[2]

GPD Officer Chargualaf was also present on the scene, having arrived shortly after Officer Quitugua. When inquired, Defendant admitted to drinking alcohol. Officer Quitugua then retrieved the glass bottle from inside the vehicle, noting it was a one-liter vodka bottle with two-thirds drained. Accordingly, Officer Chargualaf arrested Defendant for driving under the influence, pursuant to 16 Guam Code Annotated ("GCA") § 18102(a).[3] Officer Chargualaf's report stated Defendant was Mirandized, handcuffed, and placed in his patrol vehicle. After securing Defendant, Officer Chargualaf initiated a warrantless search of Defendant's vehicle where he discovered a closed Altoids tin inside the driver's door pocket.[4] He then opened the container, finding what appeared to be drug paraphernalia, *i.e.* a glass pipe with suspected methamphetamine residue and a heat-sealed plastic straw. When presented with the Altoids tin, Defendant admitted to owning it and its contents.

While the search was conducted, Officer Quitugua interviewed the two callers, they relayed the following information: While traveling along Route 4, the informants noticed Defendant's abnormal driving and began following him. Defendant's vehicle ran off the road, caused others to nearly run off the road, hit a guard rail, swerved across lanes, and almost collided with three cars. When Defendant parked, the informants remained nearby until law enforcement could arrive.[5]

---

[2] Office Quitugua stated he informed Defendant, via an Implied Consent Form, that refusing SFST could be used against him as evidence.
[3] Section 18102 (1993) of this Chapter was repealed on June 5, 2018, and replaced with 9 GCA § 92102 (2018), Driving While Impaired. Defendant's matter was not affected as he was charged in 2017, before the appeal.
[4] Altoids are a brand of mints which are commonly stored in a steel container the size of a standard ID card.
[5] *Supra* note 1.

On December 28, 2017, Defendant filed a motion to suppress evidence obtained by GPD during a warrantless search. The People filed its Opposition on January 8, 2018. Defendant then filed his Reply on January 12, 2018. However, before the matter could be heard, Defendant served a Subpeona *Duces Tecum* upon the People. Thereafter, a number of delays, such as other motions and Defendant's health condition, delayed the initial motion for a year.[6]

Then on January 7, 2019, Defendant recommenced this matter and refiled his Motion to Suppress, seeking to suppress the drug paraphernalia and his statements following his arrest.[7] On January 22, 2019, the People adopted its previous Opposition. An evidentiary hearing was then held on May 7, 2019, where the Court took the matter under advisement.

## DISCUSSION

The Fourth Amendment of the United States Constitution extends to Guam via the Organic Act of Guam. *See* 48 USCA § 1421(b). The Fourth Amendment provides that:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. Amend. IV. Accordingly, warrantless searches are presumptively unreasonable. *People v. Chargualaf*, 2001 Guam 1 ¶ 14. Thus, it is the government's burden to prove that a search falls within a valid warrant exception, rendering it reasonable. *People v. Mansapit*, 2016 Guam 30 ¶ 13; *People of Guam v. Santos*, 1999 Guam 1 ¶ 51.

### I. Defendant Was Not Seized When He Voluntarily Interacted with the Officers, Was Not Restrained by Them, and Could End the Interaction at His Volition.

Evidence may be suppressed if the seizure of a defendant is unreasonable. Seizure is when, in light of all the circumstances surrounding the incident, a reasonable person would believe he is not free to leave. *United States v. Mendenhall*, 446 U.S. 544, 553–55 (1980). A person is seized when

---

[6] Oral argument was set for 23, 2018. However, before the motion hearing, Defendant served a Subpoena *Duces Tecum* upon the People. In response, the People filed a Motion to Quash, which was granted on May 8, 2018. Then on May 14, 2018, Defendant health deteriorated and so the motion was delayed until January 7, 2019, when Defendant refiled his Motion. The briefs filed are similar in nature, adopting the previous arguments.

[7] The new motion, written by Public Defender Stephen Hattori, had minor differences but contained the same arguments as the initial motion, written by former Assistant Public Defender Clyde Lemons, Jr.

his freedom of movement is restrained by physical force, or he is compelled to comply through a show of authority. *Id.* Absent these circumstances, the interaction between the parties is considered consensual. Consent needs no warrant; it only requires volition. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973). Valid consent is analyzed in totality of the circumstances. *Id.* at 227.

The Court finds Defendant was not seized as he voluntarily interacted with the police. It is unreasonable to believe Defendant was not free to leave when no physical restraint or coercion was used against him. Officer Quitugua encountered Defendant in broad daylight on a weekend afternoon. He approached Defendant in an open area which was visible to the public. He did not block nor stop Defendant's vehicle as it was already parked and immobile.[8] No evidence suggested he brandished a weapon at any time during the exchange. Officer Quitugua's first contact was a knock on a closed car-window to gain Defendant's attention. Then through the rolled down window did Officer Quitugua pose questions to Defendant, who willingly listened and responded. *Cf. U.S. v. General*, 435 F.Supp. 2d 502, 509-10. (E.D.N.C. 2006).

Although Officer Quitugua asked Defendant questions, mere questioning does not rise to the level of custodial interrogation. *Chargualaf*, 2001 Guam 1 ¶ 20, fn. 3; *Fla. v. Bostick*, 501 U.S. 429, 434 (1991) (citing *Fla. v. Royer*, 460 U.S. 491, 497 (1983) (stating that approaching a person in public and asking questions to which he voluntarily answers is not a seizure)). No evidence suggests Officer Quitugua used a threatening tone, physically intruded into Defendant's car, or physically restrained Defendant prior to the arrest. No evidence suggests Defendant was restricted from ignoring the knock, ignoring any questions put to him, exiting his vehicle and walking away, or driving–his already running vehicle–away. *Cf. U.S. v. General*, 435 F.Supp. 2d at 508. Reasonable suspicion was not required as Defendant's seizure occurred at arrest; therefore, suppression of the drugs will not be granted on this ground.

II. **The Warrantless Search of Defendant's Vehicle Was Constitutional as the Officers had Reason to Believe Evidence Relating to the DUI Charge Would Be Found Therein.**

Evidence will be suppressed if the search of Defendant's person or property was

---

[8] Defendant argues he was seized via traffic stop; however, the Court finds Defendant was not seized. Moreover, Defendant's vehicle was already parked and stationary when Officer Quitugua arrived.

unconstitutional. An otherwise unconstitutional search is legitimized when a valid warrant exception applies, such as a search incident to arrest. *Chimel v. California*, 395 U.S. 762-63 (1969). A search incident to arrest does not require probable cause as to the search; an officer only needs probable cause for the arrest. *Accord. Id.* at 781. When a person is lawfully arrested, an officer may conduct a contemporaneous search of the arrestee's immediate area without a warrant. *Id.* at 782-83. The officer may search closed containers in an arrestee's immediate area if he has reason to believe evidence relating to the arrestee's crime would be found inside. *Arizona v. Gant*, 556 U.S. 332, 344 (2009).

If an arrestee is a recent occupant of a vehicle, the scope of the warrantless search can widen. *Id.* at 343-44. Accordingly, even if an arrestee does not have control over his immediate area, a search of the passenger compartment and any containers therein is still permissible. *Id.* To invoke this scope, either circumstance must apply: the arrestee was an unsecured occupant, or the officer had reason to believe evidence relating to the arrestee's charge would be found inside. *Id.* at 343.[9]

The Court finds that the officers had reason to believe evidence related to the DUI charge would be found in Defendant's vehicle. Under 16 GCA § 18102(a), "It is unlawful for any person while under the influence of an alcoholic beverage or any controlled substance, or under the combined influence of an alcoholic beverage and any controlled substance, to operate or be in physical control of a motor vehicle."

Officer Quitugua noticed a strong, alcohol-like odor emitting from within Defendant's vehicle and observed Defendant's slurred speech and bloodshot, watery eyes Although Defendant refused the SFST due to his injury, Defendant had also refused a blood, urine, and breath test.[10] Within Defendant's immediate area, Officer Quitugua discovered an opened bottle of vodka with one-third of the liquid remaining. In totality of these circumstances, it was reasonable for the officers to conclude Defendant was under the influence. However, the evidence relating to alcohol does not exclude the possibility of controlled substances.

Office Chargualaf discovered a closed Altoids tin within reaching distance of Defendant at

---

[9] The evidence must be related to the charge a person is arrested for.
[10] *Supra* note 2.

the time he occupied the vehicle. In Officer Chargualaf's training and experience investigating drug-related crimes at GPD, it is common for Altoids tins to be used to conceal drug paraphernalia. With his training, experience, and observations of Defendant, it was reasonable to believe drug paraphernalia would be found inside the tin. *Cf. U.S. v. Arvizu*, 534 U.S. 266, 273-74 (2002) (stating that experience and training can be used to determine reasonableness when taken in totality of the circumstances).

Officer Chargualaf's continued search which uncovered the closed container was not unreasonable. The search occurred after Defendant had been arrested. Pursuant to a search incident to an arrest, searching a closed container is permissible when an officer has reason to believe evidence relating to the arrest would be found therein. *Gant*, 556 U.S. at 343. Moreover, when evidence of a crime is found, it gives more cause to believe additional evidence could be discovered. *California v. Acevedo*, 500 U.S. 565, 580 (1991). The officers located Defendant using the informants' descriptions,[11] observed Defendant who appeared to be under the influence, discovered a two-thirds empty alcohol bottle to Defendant's immediate right, obtained voluntary admissions of drinking, knew drug paraphernalia was often hidden in Altoids tins, and discovered an Altoids tin within Defendant's immediate reach. In totality, not only did the facts support probable cause for an arrest, it further established the reasonable suspicion necessary to broaden a search. Because the search was reasonable in totality of the circumstances, suppression of the drugs will not be granted on this ground.

### III. Defendant Voluntarily Waived His Miranda Rights as He Freely Communicated and Cooperated with the Officers Despite Being Mirandized.

A defendant's statements are admissible if he waives his Miranda rights knowingly, intelligently, and voluntarily when viewed in totality of the circumstances. *People of Guam v. Farata*, 2007 Guam 8 ¶ 50. Although a waiver form is strong proof of a valid waiver, it is not the form of the waiver that matters but the evidence taken as a whole. *North Carolina v. Butler*, 441 U.S. 369, 373 (1979).

---

[11] The informant's information was self-verifying as they corroborated the officers' findings. Self-verifying evidence weighs in favor of truthfulness. Additionally, the informants had personal knowledge as to the circumstances of the case.

Defendant takes issue with the use of "acknowledged" in Officer Chargualaf's report. Defendant argues "acknowledged" does not imply he understood his rights and, in consequence, waived them. He argues the mischaracterization of the word amounts to a lie by omission since acknowledgement does not always imply only affirmative responses. Despite this, it is not disputed that Defendant was read his Miranda rights.

In refusing the SFST, Defendant alleges he demonstrated a clear disinclination to speak. Yet, in totality, this disinclination contradicts his prior volitional conduct, *e.g.* his voluntary admission to drinking, complying with the officers' requests, *etc.* After Defendant was Mirandized, he continued answering the officers' questions. No evidence suggests force, threats, and coercion were used to obtain cooperation. Defendant was only restrained upon his arrest; and despite the arrest and warnings, Defendant still answered the officer's questions. These facts, in totality of the circumstances, strongly suggest a waiver that is known, intelligent, and voluntary. Because Defendant's Miranda rights were validly waived, his statements at issue cannot be suppressed. The Court finds that all of the evidence was discovered lawfully; therefore the evidence at issue cannot be suppressed.

## CONCLUSION

Based on the preponderance of the evidence and the foregoing conclusions, the Court hereby **DENIES** Defendant's Motion to Suppress.

A **Criminal Trial Setting** is set for _____9/11/19_____ at ___10a.m___

SO ORDERED ___8/5/19___.

SERVICE VIA COURT BOX
I acknowledge that a copy of the
original hereto was placed in the
court box of:

AUG - 5 2019

Date: _____ Time: _3:50pm_

Deputy _____ Court of Guam

The Honorable Anita A. Sukola
Judge, Superior Court of Guam